UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

HENRY ROSENTHAL                               CIVIL ACTION

VERSUS                                        NO: 16-13732

ALLSTATE PROPERTY AND                         SECTION: "J" (1)
CASUALTY INSURANCE COMPANY

## ORDER AND REASONS

Before the Court is a *Motion for Summary Judgment* **(Rec. Doc. 10)** filed by Defendant Allstate Property and Casualty Insurance Company ("Allstate"), an opposition thereto filed by Plaintiff Henry Rosenthal ("Rosenthal") (Rec. Doc. 15), and a reply filed by Allstate (Rec. Doc. 21). Having considered the motion and legal memoranda, the record, and the applicable law, the Court finds that the motion should be **GRANTED**.

## FACTS AND PROCEDURAL BACKGROUND

This case arises from an insurance claim Rosenthal made on his motor home policy. On June 20, 2013, Rosenthal purchased a 1991 Bluebird RV in Virginia. He drove the RV off the lot, across the country, and to his home in Mandeville, Louisiana. From July 23, 2013 until June 8, 2015, Rosenthal never once drove the RV on the road. However, Rosenthal avers that he would occasionally run

1

the engine and drive the RV on the driveway of his property to ensure that it remained in good working order.

Rosenthal alleges that an unusually heavy rainstorm occurred at his home on or about May 27, 2015. Rosenthal avers that following this severe weather, he attempted to run the RV. He contends that that the engine would not initially turn over. When the engine did eventually run, water dripped from it and spewed out of the exhaust. Believing that the engine may have been damaged from rain water that entered the RV's vertical exhaust pipe during the May 27, 2015 storm, Rosenthal made a claim with Allstate on June 8, 2015.

On June 10, 2015, Allstate sent an adjuster to assess the extent and the cause of the damage. The adjuster drew no conclusions about what caused Rosenthal's engine trouble and instead requested that Rosenthal have a mechanic of his choice evaluate the RV and provide a repair estimate. (Rec. Doc. 10-2 at 3.) Rosenthal did not have a mechanic inspect the RV at that time. Instead, he submitted an estimate for repairing the engine from Clarke Power Services ("Clarke") after discussing the situation over the phone with someone from the company. *Id*. at 4-5. An Allstate representative informed Rosenthal that the estimate from Clarke would be insufficient and that Rosenthal would need to obtain an estimate from a mechanic who actually inspected the RV.

After more phone conversations with Rosenthal, Allstate referred the claim to a mechanical engineer in its Special Investigation Unit named Jeff Stark. *Id*. at 5. Stark determined that the engine damage was most likely caused by the RV being left idle for two years, but advised that a conclusive determination of the engine's condition would require it to be disassembled. Allstate once again informed Rosenthal that he needed to have a mechanic inspect the RV's engine. Rosenthal asserts that Allstate refused to pay to have the RV's engine disassembled or transported to a mechanic even though he alleges that the insurance policy covers this service. (Rec. Doc. 15 at 3.) Because Rosenthal did not obtain an inspection, Allstate took the position that he did not cooperate with the investigation and denied the claim for failure to provide sufficient proof of loss.

On May 25, 2016, Rosenthal filed suit against Allstate in Louisiana state court, alleging breach of contract, negligent and bad faith claims handling in violation of Louisiana Revised Statutes § 22:1973 and § 22:1892, violations of Louisiana Civil Code Articles 2315, 2316, and 2320, and negligent misrepresentation. Allstate removed the case to this Court on August 9, 2016. On March 14, 2017, Allstate filed the instant motion for summary judgment.

At issue in this motion for summary judgment is whether the damage to the engine of Rosenthal's RV is covered by the vehicle's

insurance policy.  There is no dispute that rusty water escaped from exhaust pipes when Rosenthal attempted to run the engine. Allstate's expert, Jeff Stark,[1] has seen a video of this discharge and acknowledges as much.  However, the parties disagree about how the water entered the engine.  Rosenthal contends that when strong rains fell on May 27, 2015, a large amount of rain water landed on the roof of his home.  Rosenthal's theory is that this water ran off the roof and into the vertical exhaust pipe of the RV, which was parked along the side of his home.  From there, Rosenthal avers that the water ran down the vertical exhaust pipe and into the exhaust manifold where it sat until he attempted to run the engine. At that point, Rosenthal contends, the water entered the engine and damaged it.  Rosenthal has an expert who supports this theory and suggests that it is possible for rain to fall with such intensity that it would result in a collection of water through the vertical exhaust pipe of an RV.

Allstate argues that Rosenthal's theory is not realistic and not supported by enough evidence to withstand a motion for summary judgment.  Allstate contends that the damage to the RV's engine is much more likely to have been caused from inactivity and from not running the engine for extended periods of time.  Because damage resulting from improper maintenance is not covered by the insurance

---

[1] Jeff Stark first inspected the property on June 23, 2015 on behalf of Allstate. He returned on January 31, 2017 to further assess the damage and prepare an expert report for Allstate.  (*See* Rec. Doc. 10-15 at 8.)

4

policy, Allstate argues that the damage to the RV's engine falls outside the policy's scope of coverage. Allstate also argues that it did not violate Louisiana's statutory scheme for insurer bad faith and asks the Court to grant summary judgment on this claim.

## **LEGAL STANDARD**

Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing Fed. R. Civ. P. 56(c)); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). When assessing whether a dispute as to any material fact exists, a court considers "all of the evidence in the record but refrains from making credibility determinations or weighing the evidence." *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398-99 (5th Cir. 2008). All reasonable inferences are drawn in favor of the nonmoving party, but a party cannot defeat summary judgment with conclusory allegations or unsubstantiated assertions. *Little*, 37 F.3d at 1075. A court ultimately must be satisfied that "a reasonable jury could not return a verdict for the nonmoving party." *Delta*, 530 F.3d at 399.

If the dispositive issue is one on which the moving party will bear the burden of proof at trial, the moving party "must

come forward with evidence which would 'entitle it to a directed verdict if the evidence went uncontroverted at trial.'" *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1264-65 (5th Cir. 1991). The nonmoving party can then defeat the motion by either countering with sufficient evidence of its own, or "showing that the moving party's evidence is so sheer that it may not persuade the reasonable fact-finder to return a verdict in favor of the moving party." *Id.* at 1265.

If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its burden by merely pointing out that the evidence in the record is insufficient with respect to an essential element of the nonmoving party's claim. *See Celotex*, 477 U.S. at 325. The burden then shifts to the nonmoving party, who must, by submitting or referring to evidence, set out specific facts showing that a genuine issue exists. *See id.* at 324. The nonmovant may not rest upon the pleadings, but must identify specific facts that establish a genuine issue for trial. *See, e.g.*, *id.* at 325; *Little*, 37 F.3d at 1075.

## **DISCUSSION**

The question here is whether Rosenthal has demonstrated that the damage to the RV is a covered loss under the insurance policy. "When determining whether or not a policy affords coverage for an incident, it is the burden of the insured to prove the incident

6

falls within the policy's terms." *Doerr v. Mobil Oil Corp.*, 2000-0947 (La. 12/19/00), 774 So. 2d 119, 124. Therefore, an insurance policy's scope of coverage is "an element that must be proven by the plaintiff." *Naquin v. Elevating Boats, LLC*, No. 10-4320, 2015 WL 1245757, at *2 (E.D. La. Mar. 18, 2015), *aff'd sub nom. Naquin v. Elevating Boats, L.L.C.*, 817 F.3d 235 (5th Cir. 2016); *Bayle v. Allstate Ins. Co.*, 615 F.3d 350, 358 (5th Cir. 2010) (noting that the insured carries the burden of "establish[ing] that any uncompensated (or under-compensated) damage was caused by a covered peril"). An insured who files suit against the insurer on an insurance contract bears the burden of proving "every fact essential to his cause of action." *Rosen v. United Servs. Auto. Ass'n*, 2012-0284 (La. App. 4 Cir. 11/14/12), 104 So. 3d 633, 637. As will be discussed below, Rosenthal has failed to provide any evidence on two elements of his claim: that an intense rain storm occurred on May 27, 2015 and that water from his roof entered into the engine through the vertical exhaust pipe.

Rosenthal has not demonstrated that heavy rains fell on May 27, 2015. This is important because the section of the policy under which Rosenthal made his claim would require the existence of abnormally strong rain. Rosenthal filed his claim with Allstate under the RV's comprehensive insurance policy. That policy included a section providing coverage for "direct and accidental loss," which stated:

7

> We will pay for direct and accidental loss to your insured motor home or a non-owned motor home not caused by collision. Loss caused by missiles, falling objects, fire theft or larceny, explosion, earthquake, windstorm, hail, water, flood, malicious mischief or vandalism, and riot or civil commotion is covered. Glass breakage, whether or not caused by collision, and collision with a bird or animal is covered.

(Rec. Doc. 10-12 at 23.) Although there is little Louisiana law on the subject of "direct and accidental loss" in comprehensive insurance policies, other courts have understood accidental loss to require events that are unexpected and unforeseen. *See Volquardson v. Hartford Ins. Co. of the Midwest*, 647 N.W.2d 599, 614 (2002) (finding that a direct and accidental loss provision similar to the clause at issue here was not ambiguous and covered "damage caused either by truly unforeseen events or by the intentional act of a third party"); *McCoy v. Coker,* 620 S.E.2d 691, 694 (N.C. 2005) (quoting Black's Law Dictionary to define the term accident in the context of insurance policies as "an occurrence which is unforeseen, unexpected, extraordinary, either by virtue of the fact that it occurred at all, or because of the extent of the damage"); *Fidelity and Guar. Ins. Underwriters, Inc. v. Allied Realty Co.,* 384 S.E.2d 613, 615 (Va. 1989) (defining accidental "in the same manner as Black's Law Dictionary, to wit: 'happen by chance, or unexpectedly; taking place not according to the usual course of things; casual; fortuitous'" (internal citation omitted)); *Tuturea v. Tennessee Farmers Mut. Ins. Co.*,

No. W200901866COAR3CV, 2010 WL 2593627, at *11 (Tenn. Ct. App. June 29, 2010) (analyzing a provision and concluding that "the word 'accident' as used in an insurance policy refers to an unforeseen, unexpected event occurring without intention or design"). Accordingly, the Court is satisfied that direct and accidental loss in the context of this comprehensive policy requires that damage to the RV be the product of unexpected or unforeseen events. A normal rain storm would likely not qualify as a direct and accidental loss because such a rain event would be expected to occur in the usual course of things. *See Allied Realty Co.*, 384 S.E.2d at 615.

Rosenthal asserts that a particularly severe storm occurred on May 27, 2015, and that this storm resulted in rainfall of approximately six to eight inches in the span of a couple hours. (Rec. Doc. 10-4 at 12-13). He has presented no evidence other than his own self-serving testimony to support this allegation. Allstate's expert, on the other hand, obtained records of the rainfall during May 2015 from the weather station closest to Mandeville, the Slidell Airport. The total rainfall during May 2015 at the Slidell Airport was 3.95 inches, and the total on May 27, 2015 was .45 inches. (Rec. Doc. 10-15 at 37.) Although information about precipitation in Slidell does not automatically foreclose Rosenthal's assertion that a deluge occurred at his home in Mandeville, Rosenthal puts forth no evidence of such a rain

9

storm. Rosenthal has failed to create an issue of fact as to whether a severe rain storm that fell outside the normal course of things actually occurred in May 2015.

Rosenthal has also failed to provide any evidence for his theory that water fell onto his roof and into the RV's vertical exhaust pipe. By his own admission, Rosenthal has never witnessed water entering the vertical exhaust pipe during any rain event, let alone during any alleged storms of May 2015. (Rec. Doc. 10-4 at 12.) Rosenthal's speculative theory is not sufficient to rebut the evidence provided by Allstate.

At the time of the alleged rain storm in May 2015, the RV was parked along the side of Rosenthal's home. (Rec. Doc. 10-4 at 11-12.) The left side of the RV was 54 inches away from the house, and the roof of the house had a 24 inch overhang. (Rec. Doc. 10-15 at 7.) This resulted in a 30-inch separation between the roof of the house and the left side of the RV. *Id*. The vertical exhaust pipe was on the back left corner of the RV and it faced Rosenthal's home at a forty-five degree angle. *See id*. at 27.

The RV was in the same position on January 31, 2017[2] when Allstate's expert Jeffrey Stark visited the property and attempted to re-create Rosenthal's theory. (*See* Rec. Doc. 10-15 at 12 and Rec. Doc. 10-4 at 11-12.) He placed a garden hose on the peak of

---

[2] The report provided by Rosenthal's expert states that the inspection occurred on January 30, 2017. (Rec. Doc. 10-17 at 2-3.)

Rosenthal's roof, routed the hose in the direction of the RV's vertical exhaust pipe, and turned the water on. Stark then watched the water fall off the roof to determine if any fell into the exhaust pipe. The water fell straight off the roof and down to the ground. Images from the expert report confirm that no water entered the vertical exhaust pipe. (*See* Rec. Doc. 10-15 at 26-27.)

Rosenthal's only response to this demonstration comes from himself and his expert witness. Rosenthal stated in his deposition that his experience with rain storms is that they often result in water falling off the roof at a forty-five degree angle. (Rec. Doc. 10-4 at 12.) Rosenthal's expert report stated:

> [Allstate's expert] failed to take into account weather conditions that often accompany heavy rain – particularly high-velocity winds. It was my opinion, given the angle of the water running off of the house, that water exiting the roof at a higher velocity could have easily entered directly into the vertical exhaust pipe of the vehicle. However, I am not a meteorologist or a hydrologist so I do not offer any professional opinions about that.

(Rec. Doc. 10-17 at 3.) This opinion by Rosenthal's expert is not enough to create a genuine issue of material fact about whether water entered the engine through the vertical exhaust pipe. This is especially true because the report itself warns that the expert is not in a position to posit a professional opinion about how water runs off a roof in various weather conditions. Furthermore, Rosenthal's expert acknowledged that the RV is "always going to

catch water" and that water could enter the engine through normal rains and create problems if the engine is not run for a long period of time. (Rec. Doc. 21-1 at 9.) Finally, Rosenthal presents no evidence to support the theory that the rain would have been more likely to enter the vertical exhaust pipe in a severe rain storm than in the demonstration made by Allstate's expert.

**Bad Faith Claim**

Louisiana law has two provisions that permit bad faith penalties for insurers. Louisiana Revised Statute § 22:1892(A)(1) requires an insurer to "pay the amount of any claim due any insured within thirty days after receipt of satisfactory proof of loss from the insured . . . ." La. Rev. Stat. § 22:1892(A)(1). An insurer who fails to pay the claim within thirty days is subject to certain penalties if the conduct is "found to be arbitrary, capricious, or without probable cause." La. Rev. Stat. § 22:1892(B)(1); *Cazenave v. Anpac Louisiana Ins. Co.*, No. CV 16-1420, 2016 WL 7368414, at *4 (E.D. La. Dec. 20, 2016). Section 22:1973 also provides penalties when an insurer breaches its "duty of good faith and fair dealing," and provides a list of six actions which constitute a breach of those duties. La. Rev. Stat. § 22:1973(A)-(B)(6). To obtain damages under these provisions, the insured must demonstrate (1) the insurer has received satisfactory proof of loss, (2) the insurer has failed to tender timely payment,

and (3) the insurer's failure to pay is arbitrary, capricious, or without probable cause. *Versai Mgmt. Corp. v. Clarendon Am. Ins. Co.*, 597 F.3d 729, 739 (5th Cir. 2010) (citing *La. Bag Co. v. Audobon Indem. Co.*, 999 So. 2d 1104, 1112-13 (La. 2008)).

Rosenthal argues that Allstate violated both § 22:1892 and § 22:1973 by failing to provide timely payment on the claim, and by failing to conduct a proper investigation into the claim in violation of § 22:1973(B)(1). In particular, Rosenthal argues that by conducting two inspections which ended up being inconclusive and then requiring Rosenthal to assume the cost of any further inspection, Allstate failed to meet its inspection obligations. Rosenthal cites to no authority in support of this position. Moreover, "a satisfactory proof of loss is . . . a necessary predicate to a showing that the insurer was arbitrary and capricious." *Iteld v. Four Corners Const., L.P.*, 2013-0692 (La. App. 4 Cir. 1/30/14), 133 So. 3d 312, 322. Because Rosenthal did not provide Allstate with satisfactory proof of loss, he cannot prevail on a bad faith claim under § 22:1892 or § 22:1973. *See id*.

## CONCLUSION

Accordingly,

**IT IS ORDERED** that Allstate's motion for summary judgment (Rec. Doc. 10) is **GRANTED**.

13

**IT IS FURTHER ORDERED** that Rosenthal's claims are **DISMISSED WITH PREJUDICE.**

**IT IS FURTHER ORDERED** that Allstate's motion in limine to exclude Rosenthal's expert (Rec. Doc. 12) is **DENIED AS MOOT.**

New Orleans, Louisiana this 19th day of April, 2017.

CARL J. BARBIER
UNITED STATES DISTRICT JUDGE